## MARION GAINES v. STATE.

No. A-4985.   Opinion Filed Dec. 10, 1924.
(230 Pac. 946.)

(Syllabus.)

1. **Arrest—Arrest Without Warrant—Right of Arrest for Misdemeanor and for Felony Distinguished.** Peace officers often lose sight of the distinction between the right to make arrests without a warrant in felony and misdemeanor cases. If the misdemeanor is not committed in the presence of the officer, the officer should procure a warrant before making the arrest; but a different rule applies where a felony has been committed, though not in the presence of the officer, and there is reasonable cause to believe that the person about to be arrested has committed such felony. Under such circumstances the felon, or suspected felon, may be arrested without a warrant.

2. **Searches and Seizures—Waiver of Search Warrant.** The right to immunity from a search and seizure without a search warrant may be waived.

3. **Same—Immunity Applies Only to Unreasonable and Illegal Searches and Seizures.** The right to protection and immunity against searches and seizures applies only to unreasonable and illegal searches and seizures.

4. **Arrest—Search of One Legally Arrested Permissible—Search for Narcotic Drugs Thrown Away at Time of Arrest.** One legally arrested may be searched for property connected with the offense which may be used as evidence against him, or for weapons or things which might facilitate his escape. This would apply to a search for a package of narcotic drugs thrown away by the person at the time of his arrest.

Appeal from District Court, Logan County; C. C. Smith, Judge.

Marion Gaines was convicted of the illegal possession of narcotic drugs, and he appeals. Affirmed.

George W. Carry, for plaintiff in error.

The Attorney General and G. B. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J. Marion Gaines, plaintiff in error, here referred to as the defendant, was on the 22d day of September, 1923, in the district court of Logan county, convicted of the unlawful possession of narcotic drugs, and by the verdict of the jury his punishment was fixed at confinement in the penitentiary for a term of five years and to pay a fine of $1,000.

The evidence shows that Tom Boggess, sheriff, Herb Spencer, chief of police of the city of Guthrie, C. E. James, a policeman, and W. M. Murphy, acting upon information received by them, were making a search for the defendant on the streets of Guthrie and, not being able to find him at the place designated, went to the residence of the defendant. The defendant was sitting on the porch, and as the sheriff approached he hastily arose and removed from his vest pocket a small package, and started for the door. The sheriff, sought to detain him, but he passed into the house through the screen door, and threw this package into another room, or closet. The officers later recovered the package, which contained a large number of tablets and capsules of morphine and cocaine. The defendant was placed under arrest and taken to the police station. A search warrant was procured to search the premises for intoxicating liquors and narcotic drugs, which was accordingly done, but no drugs or liquor was found in the search subsequently made. It seems that the sheriff, at the time he and the other officers were endeavoring to find the defendant on the streets of Guthrie, had a search warrant, or a copy of a search warrant, but the record does not disclose its terms or import.

The defendant earnestly contends that the narcotic drugs seized at his residence were procured by an unreasonable and illegal search and seizure, and that the court erred in permitting this evidence to be introduced over the timely objections of the defendant.

The state contends that the arrest and seizure were authorized because the defendant was apprehended and arrested for the commission of an offense in the presence of the officers, and that the arrest and seizure were further justified upon the ground that a felony had been committed and the arresting officers had reasonable grounds for believing that the defendant was the perpetrator.

Section 2471, Comp. St. 1921, provides that an officer may arrest a person without a warrant for a public offense committed or attempted in his presence. This applies to both misdemeanors and felonies. This section also provides that a person may be arrested without a warrant where a felony has in fact been committed and the officer has reasonable cause for believing the person about to be arrested committed it.

Peace officers often lose sight of the distinction between the right to make arrests without a warrant in felony and in misdemeanor cases. If the misdemeanor is not committed in the presence of the officer, the officer should procure a warrant before making the arrest; but a different rule applies where a felony has been committed, though not in the presence of the officer, and there is reasonable cause for believing that the person about to be arrested committed such felony. In this case the defendant was suspected of having violated the prohibitory law, a misdemeanor. He was also suspected of having violated the narcotic drug law, a felony. Prior to the defendant's arrest an affidavit had been filed in the county court showing the following:

"Whereas on the 20th day of May, 1923, complaint in writing and on oath was made before me and filed in this court by George W. Partridge, alleging that liquors are being manufactured, kept, and sold by one Marion Gaines, and also narcotic drugs, on lots 18 and 19 in block 84, Guthrie proper, and lots 10, 11, 12, block 83, Guthrie proper, with the intention that the same be sold in violation of law."

It would seem that the fact that the defendant had been officially accused of illegal possession of narcotic drugs, considered in connection with the conduct of the defendant at the time he was approached by the officers, justified his arrest for the commission of a felony without a warrant. Even if the offense had been a misdemeanor instead of a felony, the arrest without a warrant might still have been justified on the ground that the offense was committed in the presence of the officers.

The record discloses that the defendant probably waived his right to immunity from a search and seizure without a search warrant, as shown by his own testimony. Quoting an excerpt on that point:

"When they drove up I was setting on the porch on the east side of the house, and I seen them coming and I says, 'Well, there comes the law. I guess they are going to look me over, and I guess I will get a drink of water before they get in,' and while I was getting the water he came up to the door. And I says, 'How do you do, Mr. Boggess, do you want in?' and he said, 'Yes,' and I let him in."

The police officers testified that, as the defendant went into the house, followed by the sheriff and the other officers, he hastily removed something from his jacket pocket and threw it into a closet, and that they recovered this package, and found it to contain a quantity of morphine and cocaine tablets or capsules.

As an explanation of why no search warrant was served at the residence of defendant in the first instance, we quote from the testimony of the sheriff.

"Q. When did you get the search warrant? A. I can't tell you that either, because I don't know the time of day I went down there.    I had a copy of this search warrant in my pocket when I went down there, but I intended to look him over on the street; that is where I intended to find him.    I had heard he had just got in town.

"Q. But you don't know just when you got there? A. No. sir.

"Q. After you made the arrest, what was done? A. I took him out in the yard and asked him to stay in the yard. He had a gun lying on the front table.    He finally went back in the house, then I had to go back and get him, and brought him over and put him in jail.

"Q. Did you bring the package with you? A. Not then I didn't.    Herb Spencer had it in his pocket.

"Q. After you locked Gaines up you went back down to the house? A. Yes, sir."

In addition to this Herb Spencer, a policeman, in answer to the question "Did you have a search warrant?" said, "No, sir; I didn't; the sheriff had one." We assume that the search warrant was not served because it possibly did not properly designate the place, and that the search warrant subsequently issued was for the purpose of authorizing a further search of the premises to ascertain whether there were other narcotic drugs or intoxicating liquors there.

The right to protection and immunity from searches and seizures applies only to unreasonable and illegal searches and seizures.    If it appears in any case that a person is apprehended in the act of violating the law, he may be arrested and searched without a warrant, and that would not be an unlaw-

ful arrest or an unreasonable or illegal search and seizure. If the person the officers are about to arrest has committed a felony, or if a felony has in fact been committed, and the officers have reasonable grounds to believe that the person about to be arrested has committed it, the arrest would be justified, and the search and seizure following would also be justified, to the extent of a search of the person and his immediate belongings.

One legally arrested may be searched for property connected with the offense which may be used as evidence against him, or for weapons or things that might facilitate his escape. This would apply to a search for a package of narcotic drugs thrown away by the person at the time of his arrest. State v. Wills, 91 W. Va. 659, 114 S. E. 261, 24 A. L. R. 1398, and notes.

We hold, therefore, that under all the circumstances shown this was not an illegal arrest or an unreasonable search and seizure, and that the narcotic drugs seized were properly admitted in evidence.

The judgment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.